**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

DARYAL T. NELSON and TOMMY ARMSTRONG,                    **PLAINTIFFS**
**individually and on behalf of all persons similarly situated**

vs.                                    **2:04CV00171-WRW**

WAL-MART STORES, INC. and WAL-MART                       **DEFENDANTS**
TRANSPORTATION, LLC.

<u>**ORDER**</u>

Pending is Defendants' Motion For Summary Judgment On Plaintiffs' Class Claims

(Doc. No. 152). Plaintiffs have responded (Doc. No. 170) and Defendants have replied (Doc.

No. 181). For the reasons set out below, Defendants' Motion is DENIED.

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[1]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[2]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should only be granted when the movant has established a right to the

judgment beyond controversy.[3]  Nevertheless, summary judgment promotes judicial economy by

---

[1]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[3]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

1

preventing trial when no genuine issue of fact remains.[4]  I must view the facts in the light most favorable to the party opposing the motion.[5]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[6]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[7]

## II. DISCUSSION

The background of this case is set out in detail in a May 16, 2007, Order, and is reproduced in part here.[8]  Plaintiffs Tommy Armstrong and Daryal Nelson are African-American truck drivers who applied for positions as over-the-road ("OTR") truck drivers at transportation offices operated by Defendant Wal-Mart Transportation LLC, a wholly owned subsidiary of Defendant Wal-Mart Stores, Inc. (collectively "Wal-Mart" or "Defendants"), but were rejected.  This case challenges Wal-Mart's hiring practices for OTR truck drivers.

---

[4]*Id.* at 728.

[5]*Id.* at 727-28.

[6]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[7]*Anderson*, 477 U.S. at 248.

[8]Doc. No. 118.

Wal-Mart's Logistics Division is divided into two subdivisions: (1) the Transportation Division in charge of Wal-Mart's truck fleet and its support; and (2) the Distribution Division in charge of the distribution centers that the trucking fleet services. Wal-Mart's Transportation Division includes approximately 8,000 drivers in 47 field transportation offices nationwide. The transportation offices have their own management structure, including a general transportation manager in charge of each office and a personnel manager who, together with the general transportation manager, is responsible for hiring OTR truck drivers. The general transportation manager and personnel manager report to regional managers, who in turn report to the east or west vice president of the Transportation Division. Those vice presidents report to the senior vice president of the Transportation Division, who reports directly to the executive vice president of the Logistics Division.

All hiring and personnel policies for the transportation offices are developed at and disseminated from Wal-Mart's central headquarters in Bentonville. The policies are disseminated nationwide to the regions and individual transportation offices through an online database. Neither regional managers nor managers at individual transportation offices have the authority to develop personnel or hiring policies that diverge from the corporate policies developed in Bentonville.

The primary elements of the hiring process for drivers at every transportation office are identical. First, new drivers are recruited almost exclusively through the "word of mouth" of current Wal-Mart drivers; Wal-Mart provides current drivers with a "1-800 card" to pass out to prospective applicants.[9] The card lists the minimum driver qualifications and a 1-800 number

---

[9]*See*, for example, Doc. No. 176-16, and Plaintiff's Exhibit 134 filed under seal.

drivers can call to request an application. Wal-Mart does little advertising of its OTR driver positions in addition to the 1-800 card.[10]

All who call the 1-800 number, regardless of at which transportation office they wish to apply, are initially processed and screened at Wal-Mart's Bentonville headquarters. An application is then sent to the potential applicant. The applicant is instructed to return the completed application to the Bentonville headquarters. If the application is completed, the minimum requirements are met, and the applicant's preferred transportation office is currently hiring, the application is forwarded to the appropriate transportation office. Sometimes an applicant submits an application directly to a transportation office.

After the application is forwarded from the Bentonville headquarters, a screening committee, consisting of current drivers at the transportation office, decides which applicants will be granted an interview, and then interviews the qualifying applicants. A management committee then interviews applicants who successfully complete the screening committee interview. Wal-Mart has no written or objective criteria to guide the driver screening committees when those committees analyze applicants during the hiring process. Wal-Mart does require each driver screening committee to be 50% diverse, but that does not guarantee that any member of the screening committee is African American.

During the class period, African Americans represented 8.4% of Wal-Mart's nationwide OTR driver hires; according to a study prepared for the American Trucking Association using US Census Bureau 2002 Current Population Survey data, African Americans represented around

---

[10]See *id.*

15% of persons employed as "Driver/Sales Workers or Truck Drivers" in the "Truck Transportation" industry.[11]

### A. Plaintiffs' Disparate Treatment Claims

Plaintiffs allege disparate treatment under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.[12] Title VII and § 1981 disparate treatment claims are both analyzed under a burden-shifting framework.[13]

Under the shifting framework, in cases like this one the plaintiff must first establish a *prima facie* case of discrimination by showing that the employer "'regularly and purposefully' treated members of the protected group less favorably and that unlawful discrimination was the employer's 'regular procedure or policy.'"[14] In a class action, plaintiffs often will offer statistical evidence of the alleged disparate treatment,[15] and significant statistical disparities[16] alone may constitute a *prima facie* case.[17] "Statistical disparities are significant if the difference between the

---

[11]Doc. No. 164-3.

[12]42 U.S.C. § 2000e.

[13]See *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324 (1977).

[14]*Morgan v. UPS*, 380 F.3d 459, 463 (8th Cir. 2004) (citing *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948 (8th Cir. 1999).

[15]*Id.*

[16]Statistical significance is a measure of the probability that an observed disparity is not due to chance. *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 476 n.13 (8th Cir. 1984) (citing Baldus & Cole, *Statistical Proof of Discrimination* § 9.02, at 290 (1980)).

[17]*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977).

expected number and the observed number is greater than two or three standard deviations."[18] The converse that "standard deviations of not 'more than two or three' necessarily exclude discriminatory design as the cause is nowhere implied."[19]

Once the plaintiff meets this initial threshold, the burden then shifts to the employer, which must show that the plaintiff's proof is not accurate or not significant.[20] If the employer shows the plaintiff's proof is inaccurate or insignificant, the burden returns to the plaintiff to prove that the employer had a practice or pattern of discrimination.[21] If the employer does not satisfactorily rebut the plaintiff's evidence, the plaintiff prevails.[22]

Wal-Mart asserts it is entitled to summary judgment on Plaintiffs' class claims for the multiple reasons discussed below.

### 1. Unreliable and Irrelevant Statistical Evidence

Wal-Mart contends that Plaintiffs cannot make a *prima facie* case with respect to the "rejected class"[23] through their statistical evidence for several reasons. First, Wal-Mart argues

---

[18]See *EEOC v. Dial Corp.*, 469 F.3d 735, 741 (8th Cir. 2006) (citing *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.14 (1977)); *Castaneda v. Partida*, 430 U.S. 482, 496-97 n.17 (1977).

[19]*EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1192 (4th Cir. 1981). See also *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 476 n.13 (8th Cir. 1984) ("Statistical evidence showing less marked discrepancies will not alone establish that something other than chance is causing the result, but we shall consider it in conjunction with all the other relevant evidence in determining whether the discrepancies were due to unlawful discrimination.").

[20]*Teamsters*, 431 U.S. at 360 (1977).

[21]*Id.* at 335-36.

[22]See *id.*

[23]In a May 16, 2007, Order (Doc. No. 118), I certified the following ***class*** (emphasis added) under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

that Plaintiffs' statistical analysis is flawed because Plaintiffs' experts relied on data outside the relevant time period.[24] Second, Wal-Mart states that neither the Census data nor EEO-1 data relied upon by Plaintiffs' expert Bendick is a reasonable proxy for individuals qualified for and interested in Wal-Mart's OTR driver positions. Third, Wal-Mart maintains that a serious problem with Census and EEO-1 data is that neither source "provides information whether the individuals meet Wal-Mart's minimum qualification requirements."[25] I disagree -- I addressed these arguments in the Order denying Defendants' Motion to Exclude Testimony.[26]

Wal-Mart asserts that Plaintiffs cannot make a *prima facie* case with respect to the "deterred class" through statistics, because Plaintiffs have no statistical evidence that Wal-Mart's practices deter African American OTR-drivers from applying.[27]

---

a. African American persons who reside in the continental United States of America who have applied for employment as over-the-road truck drivers at Wal-Mart since September 22, 2001, and who have not been hired; and

b. African American persons who reside in the continental United States of America who were deterred or thwarted from applying for positions as over-the-road truck drivers at Wal-Mart due to Wal-Mart's challenged policies and practices.

I will, however, refer to a "rejected class" and "deterred class" in this Order, in part to show that even if the class is "divided," summary judgment still is not appropriate.

[24]Doc. No. 154.

[25]*Id.*

[26]Doc. No. 187. In connection with Wal-Mart's assertions about the Census and EEO-1 data, Wal-Mart's Motion reads, in part: "Bendick recognized his data sources as potentially inaccurate because no public sources provide data that tabulate long-haul OTR truck drivers separately. Neither Plaintiffs nor Defendants have located a private data source likely reflecting only long-haul drivers, other than Wal-Mart's applicant data." Doc. No. 154, n.22. I already found that it would not be appropriate to use applicant flow data in this case, and that Bendick's labor pool was a reasonable proxy. *Id.*

[27]Doc. No. 154.

Part of the class certified consists of African American persons who . . . were deterred or thwarted from applying for positions as OTR truck drivers at Wal-Mart because of Wal-Mart's challenged policies and practices.[28]

Defendant's expert Robert Topel reports that "[o]ver all years, blacks account for about 10.2 percent of completed applications, but according to the 3rd panel of the exhibit[29] they account for nearly 15% of 1-800 requests for applications."[30] Wal-Mart asserts that because African Americans accounted for nearly 15% of callers asking for an application via the 1-800 number, and because 15% is within Bendick's nationwide estimate of the African American representation of the general truck driver population, that Wal-Mart "effectively reaches out to the African American driver community."[31] While the 1-800 number plays an important role in this case, the number of African Americans who called the 1-800 number is not, taken alone, the bench-mark by which it can be determined if Wal-Mart's practices and procedures deterred or thwarted African Americans from *applying* for positions as OTR drivers.

Wal-Mart relies heavily on word-of-mouth recruiting.[32] Wal-Mart management was aware that word-of-mouth recruiting can perpetuate racial inequity.[33] Numerous courts recognize

---

[28]Doc. No. 118.

[29]Topel is referring to Exhibit 13 to his expert report.

[30]Doc. No. 158-6.

[31]Doc. No. 154.

[32]See Doc. No. 176-16. Plaintiffs' expert William Bielby estimates that 85% of applicants heard about Wal-Mart's OTR positions through informal means, while about 10% of applicants heard about the positions through Wal-Mart's formal recruitment efforts.

[33]Doc. Nos. 176-58, 176-71, and 176-72.

that word-of-mouth recruiting may be a discriminatory practice.[34] Multiple courts have found word-of-mouth recruitment discriminatory when the practice carries forward racial imbalances.[35] Word-of-mouth hiring that results in "a relatively small number of minority applicants is circumstantial evidence which helps to establish a reasonable inference of an employer's discriminatory treatment of blacks as a class."[36]  African-American applications for Wal-Mart OTR positions accounted for only 10.2% of applications. Considering all of this, I disagree with Defendants' assertion that Plaintiffs cannot make a *prima facie* case.

### 2. Plaintiffs' Anecdotal Evidence Is Limited

With respect to the "rejected class," in connection Wal-Mart's argument about Nelson and Armstrong -- and the other applicants mentioned in Wal-Mart's brief[37] -- there appear to be material facts in dispute -- making summary judgment inappropriate.[38]

With respect to the "deterred class," again, there are issues of material fact in dispute in connection with Wal-Mart's assertions that Plaintiffs' anecdotal evidence is insufficient to support a *prima face* disparate treatment claim.[39]

### B. Plaintiffs' Disparate Impact Claims

---

[34]See, for example, *Catlett v. Missouri Highway and Transp. Comm'n*, 828 F.2d 1260 (8th Cir. 1987); *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 298 (7th Cir. 1991); and *EEOC v. Metal Service Co.*, 892 F.2d 341, 350-51 (3d Cir. 1990).

[35]See *EEOC v. Metal Service Co.*, 892 F.2d 341, 350 (3d Cir. 1990) (citing *Barnett v. W.T. Grant Co.*, 518 F.2d 543, 549 (4th Cir. 1975); *Parham v. Southwestern Bell Tel.* Co., 433 F.2d 421, 426-27 (8th Cir. 1970); and others).

[36]*Id.* (citing *United States v. International Union of Elevator Constructors, Local Union No. 5*, 538 F.2d 1012, 1016 (3d Cir. 1976)).

[37]Doc. No. 154.

[38]Doc. Nos. 153, 174.

[39]*See* Doc Nos. 154, 153, and 174.

Initially, Wal-Mart asserts that Plaintiffs cannot bring a disparate impact claim under § 1981, and cites *General Building Contractors Association, Inc. v. Pennsylvania*[40] to support its position.[41] Claims brought under § 1981 require intentional discrimination.[42] Plaintiffs point out that the court in *Copeland v. Hussman Corporation*[43] denied a motion to dismiss based on the argument that § 1981 does not encompass a disparate impact claim.[44] The court in *Copeland* quoted *Edwards v. Jewish Hospital of St. Louis*[45] -- "[t]he Eighth Circuit has explained that General Building 'eliminated from § 1981's sphere of liability those cases that have a disparate impact unless that impact can be traced to discriminatory purpose.'"[46]

Plaintiffs have made an adequate showing of purposeful discrimination at this point that I will allow Plaintiffs' disparate impact claim under § 1981. Thus, the statue of limitations for § 1981 claims applies.

A disparate impact claim is also analyzed under a burden-shifting framework.[47] The plaintiff must first establish a *prima facie* case by showing that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or

---

[40]458 U.S. 375 (1982).

[41]Doc. No. 154.

[42]See 42 U.S.C. § 1981; *Gen. Bldg. Contractors Ass'n Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324 (1977).*, Inc. v. Pennsylvania*, 458 U.S. 375 (1982).

[43]462 F. Supp. 2d 1012 (E.D. Mo. 2006).

[44]Doc. No. 170.

[45]855 F.2d 1345, 1351 (8th Cir. 1988).

[46]*Copeland v. Hussman Corp.*, 462 F. Supp. 2d 1012, 1021 (E.D. Mo. 2006).

[47]See *Firefighters' Inst. for Racial Equal. v. City of St. Louis*, 220 F.3d 898, 903-04 (8th Cir. 2000).

national origin."[48] "To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two."[49] Statistical evidence often "occupies center stage" in a plaintiff's *prima facie* case.[50] Once the plaintiff makes a prima facie showing, the burden shifts to the employer, which must "convince the factfinder that its 'numerical picture is more accurate, valid, or reliable than the plaintiff[s'] evidence'"[51] or that the allegedly discriminatory practice is "job related for the position in question and is consistent with business necessity."[52] If the employer is successful in rebutting a plaintiff's *prima facie* case, then the burden shifts back to the plaintiff to show that the employer could have practiced a different policy that would meet its business needs, but with lesser discriminatory effects.[53]

Wal-Mart maintains that:

> Plaintiffs rely on the same inadequate statistical evidence that they used to support their disparate treatment claim. Relying on the same statistical data is fatal to Plaintiffs' impact claim because Plaintiffs' statistical evidence, already based on overinclusive and irrelevant data, does not address the relevant time period for Plaintiffs' impact claim. As a result, Plaintiffs cannot establish a *prima face* case of discrimination under an impact theory.[54]

---

[48]42 U.S.C. § 2000e-2(k)(1)(A)(I).

[49]*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 160 (2d Cir. 2001).

[50]*Id.*

[51]*Id.* at 161 (quoting ARTHUR LARSON ET AL., EMPLOYMENT DISCRIMINATION § 23.02 (2d ed. 2001)).

[52]42 U.S.C. § 2000e-2(k)(1)(A)(i).

[53]See *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977).

[54]Doc. No. 154.

The Order denying Wal-Mart's Motion to Exclude Testimony discusses Bendick's methodology, including challenges to Bendick including data from 1998 in his analysis, as well as numerous other challenges.[55] Above, I held that I would allow Plaintiffs' impact claim under § 1981 at this time, and that the statute of limitations for § 1981 claims applies. Further discussion about time periods included in Plaintiffs' experts' analysis is not necessary.

Wal-Mart makes several other challenges to the sufficiency of Plaintiffs' statistical evidence.[56] Plaintiffs' experts conducted detailed statistical analyses that, along with the other facts of the case, establish a *prima facie* showing of disparate impact (and disparate treatment). I am not persuaded that Defendants' experts' analyses provide a more accurate account of how Wal-Mart's hiring practices and policies effected African Americans, or that the practices and policies in place were a business necessity.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion For Summary Judgment On Plaintiffs' Class Claims (Doc. No. 152) is DENIED.

IT IS SO ORDERED this 13th day of January, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[55] Doc. No. 187.

[56] Doc. No. 154.